## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JORDAN MELODY DAWOUD, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | Civil Action No. 24-2054 (RDM) |

### <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jordan Melody Dawoud, a citizen of the United States, filed a Petition for Alien Relative (Form I-130) in January 2021 on behalf of Plaintiff Hashem A.H. Dawoud, seeking to classify him as her spouse for immigration purposes. After her petition had been pending without adjudication for 42 months, Plaintiffs brought this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 555 *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Fifth Amendment to the U.S. Constitution against the United States Department of Homeland Security ("DHS"), Alejandro N. Mayorkas in his official capacity as Secretary of Homeland Security, United States Citizenship and Immigration Services ("USCIS"), Ur Mendoza Jaddou in her official capacity as Acting Director of USCIS, USCIS Potomac Service Center, Homeland Security Investigations ("HSI"), Steve K. Francis in his official capacity as Acting Executive Director of HSI, Matthew D. Emrich in his official capacity as Associate Director of USCIS's Fraud Detection and National Security Division, the Federal Bureau of Investigations ("FBI"), Christopher A. Wray in his official capacity as Director of the

FBI, and Merrick B. Garland in his official capacity as U.S. Attorney General (collectively, "Defendants").

Plaintiffs seek a declaration that Defendants' delay in adjudicating Ms. Dawoud's I-130 petition is unlawful, and they ask the Court to issue a writ of mandamus requiring that Defendants adjudicate the petition within thirty days. Dkt. 1 at 10–13 (Compl. ¶¶ 30–46). They also seek attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2). Dkt. 1 at 13 (Compl. ¶ 46). Pending before the Court is Defendants' motion to transfer the case pursuant to 28 U.S.C. § 1404(a) to the Northern District of Illinois, where Plaintiffs reside. Dkt. 4 at 6. Defendants move, in the alternative, to dismiss this case under Federal Rule of Civil Procedure 12(b)(3) for improper venue. Dkt. 5 at 14.

For the reasons set forth below, the Court will **GRANT** Defendants' motion to transfer the case to the Northern District of Illinois.

## I. BACKGROUND

When evaluating a motion to transfer a case, "a court should only consider undisputed facts supported by affidavits, depositions, stipulations, or other relevant documents." *One on One Basketball, Inc. v. Glob. Payments Direct, Inc.*, 38 F. Supp. 3d 44, 48 (D.D.C. 2014). The Court therefore draws the relevant facts from uncontested allegations in the complaint and the documents that Plaintiffs filed with it.

Plaintiffs were married in Orland Park, Illinois, on January 4, 2020, and currently reside in Oak Lawn, Illinois. Dkt. 1-2 at 11 (Ex. E); Dkt. 1 at 6 (Compl. ¶ 12). On January 12, 2021, Ms. Dawoud filed a Petition for Alien Relative (Form I-130), on behalf of her husband Mr. Dawoud, seeking to classify him as the spouse of a U.S. citizen for immigration purposes. Dkt. 1

at 8 (Compl. ¶ 13).[1]  USCIS, the agency tasked with adjudicating Form I-130 petitions, sent Ms. Dawoud a letter confirming receipt of her petition on March 6, 2021.  Dkt. 1-2 at 13 (Ex. F).

USCIS provides information about case processing times on its website.  According to Plaintiffs, that website stated that the usual processing time for petitions like Ms. Dawoud's was 14.5 months, meaning 80% of cases are adjudicated within that timeframe.  Dkt. 1 at 9 (Compl. ¶ 17).  Ms. Dawoud's petition, however, has taken much longer, and, as far as the Court can discern, still remains pending 44 months after it was received.

Plaintiffs have not sat idly waiting all that time.  After waiting more than two years without receiving a decision, Plaintiffs began to contact USCIS through their attorney.  They contacted USCIS five times between August 2023 and February 2024, inquiring "why [their] case [was] taking longer than [USCIS's normal] processing time."  Dkt. 1-2 at 15 (Ex. G).  They also submitted a request to a USCIS Ombudsman in April 2024 asking for assistance, but the response they received was (according to Plaintiffs) "unhelpful and did not resolve the delay." Dkt. 1 at 9 (Compl. ¶ 16); *see also* Dkt. 1-2 at 16–21 (Ex. H; Ex. I).

This suit followed.  Dkt. 1.  On July 16, 2024, Plaintiffs filed a complaint alleging that USCIS's delay in adjudicating Ms. Dawoud's I-130 petition was arbitrary, capricious, and not in accordance with law and that the agency had "unlawfully withheld or unreasonably delayed" an action it is required to take under the INA, all in violation of the APA.  *Id.* at 10–11 (Compl. ¶ 34).  They request that the Court (1) "[d]eclare that the Defendants' acts and omissions" violate the INA, the APA, the Fifth Amendment, and the Equal Access to Justice Act and (2) "[i]ssue a

---

[1] Plaintiffs' complaint runs from paragraphs 1-18 and then starts again at paragraph 13.  It then runs from 13-37 before jumping to paragraph 46-48, starting again at paragraph 41, and then jumping to paragraph 51, before concluding with paragraph 46.  Dkt. 1.  Although confusing, the combination of page number and paragraph number can be used to distinguish Plaintiffs' allegations.

writ of mandamus requiring that the . . . United States and its agencies adjudicate the immigrant visa petition for the Plaintiffs within thirty (30) days." *Id.* at 13 (Compl.).

On October 15, 2024, Defendants responded by filing a motion to transfer the case pursuant to 28 U.S.C. § 1404(a), or, in the alternative, to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. Dkt. 4; Dkt. 5. Plaintiffs filed an opposition to transfer or dismissal on November 11, 2024, Dkt. 6, and Defendants filed a reply on November 18, 2024, Dkt. 7.

## II. DISCUSSION

Under 28 U.S.C. § 1404(a), the Court may transfer a case to "any other district or division where it might have been brought" for the "convenience of [the] parties and witnesses, in the interest of justice." The inquiry is two-fold. First, the Court must determine whether the case could have been brought in the proposed transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Second, the Court must decide whether the private and public interests at stake favor transfer. *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 127 (D.D.C. 2018); *see also Ike v. USCIS*, No. 20-cv-1744, 2020 WL 7360214, at *2 (D.D.C. Dec. 15, 2020). As the moving party, Defendants bear the burden of justifying the proposed transfer. *Aracely*, 319 F. Supp. 3d at 127.

For the following reasons, the Court will transfer this action to the United States District Court for the Northern District of Illinois, where the Plaintiffs reside.

## A. Where the action could have been brought

The Court starts its analysis by evaluating whether the proposed transferee district was one in which Plaintiffs could have brought their lawsuit. *Barrack*, 376 U.S. at 616. The answer to that question is "yes."

When an agency of the United States is the defendant, as here, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or . . . (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Plaintiffs reside in Oak Lawn, Illinois, which is in the Northern District of Illinois. Dkt. 1-2 at 11 (Ex. E); *see also Cruz on behalf of L.C. v. Pritzker*, No. 21-cv-3199, 2021 WL 4586449, at *2 (C.D. Ill. Oct. 6, 2021) (stating that Oak Lawn is in the Northern District of Illinois). Because Plaintiffs reside in the Northern District of Illinois and because "no real property is involved in the action," venue is proper in that district. 28 U.S.C. § 1391(e)(1). Plaintiffs do not contend otherwise.

## B.  Private and public interest factors

Instead, Plaintiffs contest transfer on the grounds that "the private and public interest factors" "do not outweigh Plaintiffs' rightful choice of forum." Dkt. 6 at 9. Plaintiffs' choice of forum, however, is only part of the equation. To determine whether transfer of venue is proper, the Court must weigh each of the private and public interests at stake and must determine whether, considered together, they support a transfer. Factors to consider include the "preferred forum of the parties," but they also include "the location where the claim arose" and "other factors of convenience," as well as "the transferee district's familiarity with the governing law," "the relative congestion of the courts," and the "local interest in deciding local controversies at home." *Aracely*, 319 F. Supp. 3d at 128–30. In making the decision to transfer, the Court must make an "individualized, case-by-case consideration of convenience and fairness." *Abusadeh v. Chertoff*, No. 06-cv-2014, 2007 WL 2111036, at *3 (D.D.C. July 23, 2007) (quoting *Barrack*, 376 U.S. at 622).

Here, the private and public interests largely weigh in favor of transfer, with two exceptions—the relative congestion of the courts and the proposed transferee district's familiarity with the governing law, both of which are neutral. As a result, on balance, the scales tip decidedly in favor of transfer.

1. *Preferred forum of the parties*

First, as to the preferred forum of the parties, Defendants prefer the Northern District of Illinois, *see* Dkt. 5, while Plaintiffs prefer the District of Columbia, where they brought the action. Dkt. 1 (Compl.); *see also* Dkt. 6. Although courts accord the plaintiff's choice of forum substantial weight, *Gyau v. Sessions*, No. 18-cv-407, 2018 WL 4964502, at *2 (D.D.C. Oct. 15, 2018), deference to the plaintiff's choice of forum is lessened when that forum is not the plaintiff's home forum, *Abusadeh*, 2007 WL 2111036, at *4, and that is particularly so when the "plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter,'" *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (alteration in original) (quoting *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979)).

Here, the District of Columbia lacks meaningful ties to this controversy. Plaintiffs make efforts to avoid this conclusion, but in doing so they offer only conclusory allegations that their case turns on "federal immigration policies administered by agencies and officials based in Washington, D.C." and that their case implicates "issues of national importance." Dkt. 6 at 8. Were Plaintiffs correct about either of these assertions, they would have good grounds to oppose transfer. But they are not correct. Their complaint does not challenge a national immigration policy but, rather, merely challenges the specific delay in adjudicating Ms. Dawoud's I-130 petition. Indeed, they support their allegation of undue delay by pointing to the comparative

pace at which other, similar petitions are typically processed. They assert that "the delay in

adjudicating the petition involves national immigration policy, decisions, and actions directly

connected to agencies or high-ranking officials in D.C., such as DHS and USCIS," *id.* at 8–9, but

they fail to identify any policy, decision, or actions taken by a government official in the District

of Columbia in either their complaint or in their opposition to Defendants' motion to transfer.

Although they speculate that "[t]he nature of immigration processing and any administrative

delay *may* reasonably stem from policy decisions or actions at a higher administrative level, not

purely local USCIS officers," *id.* at 9 (emphasis added), that speculation proves too much and

would apply equally to every motion to transfer a case that involves the "processing" of an

immigration application or petition.

The D.C. Circuit's decision in *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir.

1993), provides helpful guidance. In that case, an inmate incarcerated at Terre Haute

Penitentiary in Indiana brought suit in this Court challenging the prison's refusal to provide him

with a low-sodium diet. *Id.* at 255. He named as defendants the warden of Terre Haute

alongside "other federal officials, including then Attorney General Richard Thornburgh." *Id.* at

254. Despite the fact that the plaintiff named D.C.-based officials as defendants in his

complaint, the D.C. Circuit held that venue in the District of Columbia was improper because the

plaintiff "did not allege a single rule or policy emanating from Washington that had affected his

case," and because any "assumption that policy decisions made in Washington ultimately

affected [his] treatment at Terre Haute" was "wholly unsubstantiated." *Id.* at 257.[2] In so

---

[2] The D.C. Circuit's holding in *Cameron* that venue was improper is relevant both to whether
venue is proper here and to whether Plaintiffs have identified ties to the District of Columbia
sufficient to support their choice of forum. Because the Court will grant Defendants' motion to
transfer pursuant to 28 U.S.C. § 1404(a), it need not decide whether venue is proper in this

holding, the D.C. Circuit cautioned that this Court should "carefully [] guard against the danger that a plaintiff might manufacture venue in the District of Columbia" "[b]y naming high government officials as defendants" in a case in which "all acts and omissions related to [the] complaint occurred" elsewhere. *Id.* at 256.

Here, Plaintiffs allege unlawful delay at a service center located outside the District of Columbia and merely speculate that some unidentified national immigration policies might have contributed to that delay. But the plaintiffs in *Cameron* could have—and did—offer a similar speculation, and the D.C. Circuit rejected that speculation as insufficient to support venue. As the court explained, to establish meaningful ties to Washington D.C., a plaintiff must identify an actual policy, decision, or action taken in the forum district and must tie that policy, decision, or action to the harm alleged in her complaint. Plaintiffs here have failed to do so.

Rather than focus on any official action (or omission) taken in this district, Plaintiffs argue that their counsel elected to bring suit in this district because they are admitted to practice here, but not in the Northern District of Illinois. *See* Dkt. 6 at 10–11. Plaintiffs urge the Court to consider that "important practical issue" as a "factor [that] weighs heavily against transfer" because Plaintiffs would have to "secure new counsel" in the event of a transfer and "it would be unjust to compel Plaintiffs to seek alternative representation at this stage of [the] litigation." *Id.* at 11. But the forum where a party's attorney is admitted to practice is "entitled to little, if any, weight under 28 U.S.C. § 1404(a)." *Munoz v. England*, No. 05-cv-2472, 2006 WL 3361509, at *8 n.4 (D.D.C. Nov. 20, 2006). That is particularly so where, as here, counsel has failed to

---

District. 28 U.S.C. § 1404(a). As the Supreme Court has explained, "§ 1404(a) does not condition transfer on the initial forum's being 'wrong.' . . . [I]t permits transfer to any district where venue is also proper (i.e., 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 59 (2013) (quoting 28 U.S.C. § 1404(a)).

explain why he or she cannot obtain leave to appear in the transferee court *pro hac vice*. *See Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 38 (D.D.C. 2009) (transferring a case over the plaintiff's protestations that its counsel was not admitted in the transferee district and noting that the plaintiff had "fail[ed] to explain why its counsel could not simply appear *pro hac vice* in that forum"). The Court notes, moreover, that Plaintiffs' counsel are located in Michigan, so travel to the Northern District of Illinois would likely pose a lesser burden than travel to the District of Columbia.

Finally, Defendants' choice of Plaintiffs' home forum weighs in favor of transferring the case there and cuts against Plaintiffs' opposition. "[W]hen the forum preferred by the plaintiff is not his home forum, and the defendant prefers the *plaintiff's* home forum, then there is little reason to defer to the plaintiff's preference." *Tower Lab'ys, Ltd. v. Lush Cosms. Ltd.*, 285 F. Supp. 3d 321, 325 (D.D.C. 2018) (citations omitted).

The Court, accordingly, concludes that the parties' preferences support transfer.

2.      *Location where the claim arose and local interest*

The claims in this case arose outside of the District of Columbia and thus this factor also weighs in favor of transfer. In cases challenging the processing of immigration applications, the relevant events occur in the plaintiff's home district (where they prepare and submit their application) and in the district in which the USCIS office or service center that is responsible for processing the application is located. This Court, accordingly, often transfers cases either to the plaintiff's home district or to the district where the USCIS office or service center responsible for processing the plaintiff's application is located. *See, e.g.*, *Roh v. USCIS*, No. 21-cv-1291, 2021 WL 5050071, at *1 (D.D.C. Nov. 1, 2021) (transferring to plaintiff's home district); *Ike*, 2020

WL 7360214, at *2 (transferring to district where application was processed); *see also* Dkt. 4 at 9–10 (collecting cases).

Here, Plaintiffs reside in the Northern District of Illinois, and "the impacts of the outcome of this case will be felt most acutely not in the District of Columbia, but within the [Northern] District of Illinois." *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 340 (D.D.C. 2020). The controversy in this case is principally local, and "[t]here is a local interest in having localized controversies decided at home." *Onaghise v. U.S. Dep't of Homeland Sec.*, No. 20-cv-1048, 2020 WL 5642280, at *3 (D.D.C. Sept. 22, 2020) (alternation in original) (quoting *Adams v. Bell*, 711 F.2d 161, 167 (D.C. Cir. 1983)); *see also Bahena v. Renaud*, No. 20-cv-291, 2021 WL 1820232, at *4 (D.D.C. May 6, 2021).

Neither party advocates for transfer to the district where Ms. Dawoud's application is being processed, and, indeed, there is some confusion as to where precisely that is. Plaintiffs and Defendants both state that the application is being processed at the Potomac Service Center in Arlington, Virginia. *See* Dkt. 1 at 6 (Compl. ¶ 13); Dkt. 4 at 6. But Plaintiffs also filed a letter from the USCIS Ombudsman that states that Ms. Dawoud's "Form I-130 Petition for Alien Relative is pending with the Dallas Field Office." Dkt. 1-2 at 19 (Ex. I). What is certain, however, is that the application is not pending at an office in the District of Columbia. Nor is USCIS—the agency ultimately responsible for overseeing immigration applications—currently headquartered in the District of Columbia. In 2020, USCIS moved its headquarters to Camp Springs, Maryland. *See Wei Lai Dev. LLC v. USCIS*, No. 21-cv-0887, 2021 WL 2073403, at *3 n.5 (D.D.C. May 24, 2021). There is no evidence that any of the processing of Ms. Dawoud's application has occurred in the District of Columbia, and so even if the Court were to look at where the processing took place, it would not weigh against transfer to Plaintiffs' home district.

10

Because the acts and omissions giving rise to this case have occurred outside of the District of Columbia, this factor weighs in favor of transfer.

3.    *Convenience*

The Northern District of Illinois would also constitute the more convenient forum for this action.  Although resolution of this case is unlikely to require an evidentiary hearing or trial, the Court cannot entirely exclude that possibility, and "to the extent that resolving this case might require any witness testimony or documentary evidence, those witnesses and documents are most likely to reside in [Illinois]," *Ike*, 2020 WL 7360214, at *4, or in the state in which the petition is being processed.  The Plaintiffs reside in the Northern District of Illinois, and the documents Plaintiffs may need to marshal in support of their petition are likely located there as well. Moreover, as noted above, Plaintiffs' counsel are located in Michigan and, accordingly, Plaintiffs and their counsel will not need to travel as far, should any in-court appearances be required. "Venue is convenient where [the] parties are located," and Plaintiffs "cannot reasonably claim to be inconvenienced by litigating in [their] home forum."  *Wolfram Alpha*, 490 F. Supp. 3d at 333 (citations omitted).  In contrast, Plaintiffs have failed to identify any convenience (beyond the fact that their counsel is admitted to practice in the District of Columbia, which the Court has addressed above) that would be served by maintaining the present forum.

Convenience, therefore, favors transfer.

4.    *Transferee district's familiarity with governing law*

The federal judges in the Northern District of Illinois, like all federal judges, "are familiar with federal laws, including those at issue in immigration disputes."  *Bahena*, 2021 WL 1820232, at *4; *see also Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 83 (D.D.C. 2009) ("The transferee district is presumed to be equally familiar with the federal laws governing [the

plaintiff's] claims."); *Wolfram Alpha*, 490 F. Supp. 3d at 335; *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 101 (D.D.C. 2013).  The relative competency of each jurisdiction, accordingly, does not weigh in favor of either forum.

     5.     *Relative congestion of the courts*

     Finally, the Court must evaluate "the relative congestion of the courts."  *Aracely*, 319 F. Supp. 3d at 130.  According to official reports, the median time "from filing to disposition" as of June 30, 2024, was 6.1 months in the Northern District of Illinois, as compared to 5.6 months in this district.  *See* U.S. District Court—Federal Court Management Statistics—Profiles, United States Courts (June 30, 2024), https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2024/06/30.  The median disposition times in the two districts are less than a month apart, and both districts resolve cases faster than the national average, which is 8.1 months.  *Id.*

     Accordingly, the Court concludes that the relative congestion between districts does not weigh in favor of either forum.

**CONCLUSION**

The public and private interests tip in favor of transfer, except for two factors, the congestion and competencies of the relevant courts, which are neutral.  The Court, accordingly, hereby **GRANTS** Defendants' motion to transfer, Dkt. 4, and **ORDERS** the Clerk of Court to transfer this case to the United States District Court for the Northern District of Illinois.  In light of that decision, the Court will not consider Defendants' motion to dismiss, Dkt. 5.  *See Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 16 n.2 (D.D.C. 2009).

        **SO ORDERED.**

                      /s/ Randolph D. Moss
                      RANDOLPH D. MOSS
                      United States District Judge

Date:  December 3, 2024